UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-944(DSD/JSM)

Daniel M. Swanson and
Karla J. Swanson,

                    Plaintiffs,

v.                                                          **ORDER**

GMAC Mortgage, LLC, North
American Banking Company,
Electronic Registration
Systems, Inc. and Federal
National Mortgage Association,

                    Defendants.


        Christopher P. Parrington, Esq., Andrew S. Dosdall, Esq.,
        Patrick D. Boyle, Esq. and Skjold Parrington, PA, 222
        South Ninth Street, Suite 3220, Minneapolis, MN 55402 and
        Amoun Vang Sayaovong, Esq. and Legal Solutions LLC, 150
        Eaton Street, Suite 105, St. Paul, MN 55107, counsel for
        plaintiffs.

        Donald G. Heeman, Esq., Randi J. Winter, Esq. and
        Felhaber, Larson, Fenlon & Vogt, P.A., 220 South Sixth
        Street, Suite 2200, Minneapolis, MN 55402, counsel for
        defendants GMAC Mortgage, Electronic Registration
        Systems, Inc. and Federal National Mortgage Association.


        This matter is before the court upon the motion to dismiss by

defendants GMAC Mortgage, LLC (GMAC), Electronic Registration

Systems, Inc.[1] and Federal National Mortgage Association.[2]  Based

--------------------------------

        [1] It appears that plaintiffs intended to add Mortgage
Electronic Registration Systems as a party.

        [2] Plaintiffs also named North American Banking Company as a
party, but did not serve this defendant.

on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This mortgage-loan dispute arises out of a promissory note (Note) and mortgage executed on February 21, 2008, by plaintiffs Daniel M. Swanson and Karla J. Swanson for property located at 1112 Superior Drive, Northfield, Minnesota 55057.  Am. Compl. ¶¶ 6-7. The Note had a principal value of $328,000.  See id. ¶ 8.  The Swansons made monthly payments of $2,378.23 until summer 2008.  See id. ¶ 12.  Financial hardship caused the Swansons to fall behind on their payments, whereupon they entered into a forbearance agreement (FA) with GMAC in fall 2008.  See id. Ex. A.  The FA required the Swansons to make four monthly payments of $2,649.06 from October 2008 through January 2009.  Id. ¶ 16.  The Swansons agreed that "[u]pon completion of the forbearance, the Servicer [would] consider options to bring the loan current."  Id. Ex. A.  The Swansons also agreed that the FA did "not constitute a waiver of the acceleration, a wavier of the right of the Servicer to enforce the mortgage, or a waiver of the right to complete the existing foreclosure proceedings."  Id.  In November 2008, GMAC instructed the Swansons to stop making FA payments, because their November payment was received late.  Id. ¶ 24.

Thereafter, the Swansons applied for a loan modification. See id. ¶ 28. On February 19, 2010, the Swansons were notified of their eligibility for a Home Affordable Modification Program (HAMP) Workout Plan. Id. Ex. B. The Workout Plan required payments of $2,808.49 from April 2010 through June 2010. See id. Ex. C ¶ 2.

A letter from GMAC accompanying the Workout Plan stated that the Swansons had not yet met "all of the qualifications for the Permanent Modification." Id. Ex. B. In fact, the Workout Plan stated that it was "Step One of [a] Two-Step Documentation Process," and that GMAC "may provide" a permanent loan modification if the Swansons remained in compliance with the terms of the Workout Plan. Id. Ex. C (emphasis added). Further, the Workout Plan stated that "if prior to the [completion of the Workout Plan], I have not made the Trial Period Payments ... the Loan Documents will not be modified and this Plan will terminate." Id. Ex. C ¶ 2F. The documents explained "that the plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until I meet all of the conditions required for modification." Id. Ex. C ¶ 2G. Finally, the Workout Plan explained that if the Swansons complied with all requirements of the Workout Plan, then GMAC "may send ... a Modification Agreement for ... signature which will modify [the] Loan Documents as necessary to reflect th[e] new estimated payment amount." Id. Ex. C ¶ 3 (emphasis added).

3

The Swansons timely submitted their first two monthly payments under the Workout Plan. Id. ¶¶ 35-36. It is unclear whether the third payment was received in a timely manner. Compare id. ¶ 37 ("In or about June 2010, Plaintiffs made their third and final payment ..."), with Compl. ¶ 10, ECF No. 1-1 ("Plaintiffs acknowledges [sic] that the last payment, the June Payment, was late."). GMAC notified the Swansons on July 9, 2010, that their loan modification was being denied for untimely submission of their last payment. See Am. Compl. Ex. D. Thereafter, the Swansons submitted another application for a loan modification, whereupon an unidentified GMAC representative allegedly told the Swansons "that they were legally unable to proceed with a foreclosure during the modification process." Id. ¶ 42.

On September 8, 2010, the Swansons received a notice of mortgage foreclosure. Id. Ex. E. The notice indicated that a sheriff's sale was scheduled for November 2, 2010, and that the Swanson's redemption period would end on May 2, 2011. Id. Ex. E, at 2-3. Shortly thereafter, the Swansons received notification from GMAC that their third loan modification was denied. Id. Ex. F. The Swansons submitted yet another loan-modification application, and were allegedly told that "GMAC would request a postponement once the Sheriff's sale date drew closer." Id. ¶¶ 50-51, 58. The sheriff's sale commenced, as originally scheduled, on November 2, 2010. Id. ¶ 60.

4

On March 22, 2011, the Swansons began this action in state court.  Defendants timely removed.  On November 18, 2011, the Swansons filed an amended complaint alleging breach of contract, breach of mortgagee duty, fraud, negligent misrepresentation, promissory estoppel and unjust enrichment.  The Swansons also seek a declaration that they have fully performed their obligations and are entitled to modification of the Note and injunctive relief tolling the redemption period.  Defendants move to dismiss.

## DISCUSSION

## I.    Loan Modification

Defendants first argue that the Swansons' claims are per se barred because HAMP lacks a private right of action.  The United States Department of the Treasury created HAMP in response to a directive in the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201–5261.  HAMP gives financial incentives to encourage mortgage servicers to modify mortgage loans.  See Williams v. Geithner, No. 09-1959, 2009 WL 3757380, at *2 (D. Minn. Nov. 9, 2009).  As this court has previously noted, there is no private right of action under HAMP.  See McInroy v. BAC Home Loan Servicing, LP, No. 10-4342, 2011 WL 1770947, at *3 (D. Minn. May 9, 2011).

HAMP uses a two-step process for modifications.  See U.S. Dep't of Treasury, Supplemental Directive 09-01, Introduction to

the Home Affordable Modification Program 14 (2009).  Step one involves a trial plan in which a servicer and borrower agree to trial payments.  Participating servicers must evaluate several criteria, including a net present value calculation,[3] when considering whether to offer a modification.  <u>Williams</u>, 2009 WL 3757380, at *2-3 & 3 n.3.  If a borrower meets all HAMP criteria and makes trial payments, step two involves modification of the underlying loan.  <u>See</u> Supplemental Directive 09-01, at 14.  The Trial Period Plan is "three months in duration (or longer if necessary to comply with applicable contractual obligations)."  <u>Id.</u> at 17.

Defendants cite <u>Cox v. Mortgage Electronic Registration Systems</u>, 794 F. Supp. 2d 1060 (D. Minn. 2011), in support of their argument that the Swansons' claims are barred by the lack of private remedy under HAMP.  The Swansons respond that <u>Cox</u> does not stand for the proposition that HAMP creates an absolute shield for lenders under state law.  The court agrees.  <u>Cox</u> did not consider whether state law claims that implicate HAMP are preempted.[4] Instead, in <u>Cox</u>, the court determined that the lack of a private cause of action reinforces the fact that HAMP, the ESSA and entry

---

[3] The NPV calculation compares the expected return if a loan were modified with the expected return if not modified.

[4] Preemption is a powerful doctrine that the court does not invoke with a single sentence.  As in <u>Cox</u>, the court need not address the question of preemption, because each of the Swansons' claims fail on the merits.

into a Trial Period Plan do not create an unconditional entitlement to a loan modification.  As a result, each of the state-law claims in <u>Cox</u> failed on the merits.

This case is similar.  All of the Swansons' claims relate to their belief that they were entitled to a modification based on the Workout Plan and the defendants' conduct associated with the request.  Accordingly, as in <u>Cox</u>, the court addresses each claim.

## II.  Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  <u>See Twombly</u>, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

## III.  State Law Claims

### A.   Breach of Contract

A breach of contract claim requires the plaintiff to establish formation of a contract, performance of conditions precedent and a breach.  See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). Formation of a contract requires "a specific and definite offer, acceptance and consideration."  Id.  The court judges contract formation based on the objective conduct of the parties.  Id.

The Swansons argue that the Workout Plan is a contract to modify the Note.  The defendants respond that a contract was not formed, because no offer to modify was present.  The court agrees. The amended complaint does not allege facts that would allow the court to infer that the defendants made an offer to modify the Note.  In fact, the Workout Plan specifically states that GMAC "may send ... a Modification Agreement" at a later date and "that the plan is not a modification of the Loan Documents."  Am. Compl. Ex. C ¶¶ 2G, 3.  In other words, the Workout Plan is an offer to consider modification, expressly conditioned on continued trial payments (for three months or longer) and other criteria.  See Laurent v. Mortg. Elec. Registration Sys., Inc., No. 11-2585, 2011 WL 6888800, at *2 (D. Minn. Dec. 30, 2011); Wittkowski v. PNC Mortg., No. 11-1602, 2011 WL 5838517, at *3-4 (D. Minn. Nov. 18, 2011).  As a result, no contract formed.

Further, neither the Workout Plan nor any alleged oral representations qualify as a credit agreement under Minnesota law. Agreements "to lend or forbear repayment of money ... to otherwise extend credit, or to make any other financial accommodation" must be "in writing, express[] consideration, set[] forth the relevant terms and conditions, and [be] signed by the creditor and the debtor." Minn. Stat. § 513.33, subdivs. 1, 2; see Tharaldson v. Ocwen Loan Servicing, LLC, No. 11-1392, 2011 WL 6957555, at *4 (D. Minn. Dec. 15, 2011).

The Swansons argue that § 513.33 does not apply, because the Workout Plan "was a modification of an existing credit agreement." Pls.' Mem. Opp'n 14-15.   Section 513.33, however, applies to "financial accommodations," and although this term is undefined, the statute includes examples such as "forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements." Minn. Stat. § 513.33, subdiv. 2.  The Workout Plan encompasses both examples, and thus § 513.33 is applicable.

Neither the Workout Plan nor any oral representations modified the terms or conditions, such as monthly-payment amounts or interest rates, of the Swansons' original Note.  Therefore, no new contract formed and dismissal of this claim is warranted.[5]

_____

[5] Because the Swansons' breach of contract claim is barred by Minnesota Statutes § 513.33, the court need not address whether
(continued...)

B.    **Breach of Mortgagee Duty**

The Swansons next allege a breach of the mortgagee duty under Minnesota Statutes § 580.11.  This statute relates to foreclosure by advertisement and states that "the mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale."  Minn. Stat. § 580.11.  The statute imposes no fiduciary duty on the mortgagee and does not concern a mortgagee's actions prior to foreclosure.  See Scott v. Wells Fargo Bank, N.A., No. 10-3368, 2011 WL 381766, at *4 (D. Minn. Feb. 2, 2011).  The Swansons allege that defendants breached their "statutory duty of good faith and fair dealing by foreclosing on the Property despite the existence of the Modification."  Am. Compl. ¶ 81.  As the court already explained, a contact for a permanent loan modification never existed.  Therefore, the claim for breach of mortgagee duty fails.

---

[5](...continued)
equitable estoppel and the doctrine of part performance preclude application of the statute of frauds.  The court notes, however, that both claims nevertheless fail.

As to equitable estoppel, neither concealment of a material fact nor detrimental reliance can be shown.  See Lunning v. Land O'Lakes, 303 N.W.2d 452, 457 (Minn. 1980).  Further, part performance is inapplicable, because detrimental reliance cannot be shown.  See Burke v. Fine, 51 N.W.2d 818, 820 (Minn. 1952).

The court also notes that even if a viable contract had formed, the Swansons failed to meet a condition precedent, because they stopped monthly payments.

###### C.    Fraud

A plaintiff must plead fraud with particularity. <u>See</u> Fed. R. Civ. P. 9(b). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how" of an alleged fraud. <u>United States ex rel. Joshi v. St. Luke's Hosp., Inc.,</u> 441 F.3d 552, 556 (8th Cir. 2006). In other words, a plaintiff must plead "the time, place and contents" of the false representations, the identity of the individual who made the representations and what was obtained thereby. <u>BJC Health Sys. v. Colom. Cas. Co.,</u> 478 F.3d 908, 917 (8th Cir. 2007).

Under Minnesota law, a plaintiff establishes a claim for fraudulent misrepresentation by establishing that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

<u>Specialized Tours, Inc. v. Hagen</u>, 392 N.W.2d 520, 532 (Minn. 1986) (citations omitted).

The fraud claim is based on two alleged misrepresentations: 1) that the Swansons would receive a permanent loan modification if they complied with the terms of the Workout Plan and 2) that the defendants could not foreclose during the modification process.

Am. Compl. ¶¶ 84-85.  As an initial matter, these bare assertions do not satisfy the Rule 8 pleading standard, much less the heightened pleading standard imposed under Rule 9.

As to the Workout Plan, the Swansons are unable to establish a false representation.  The Workout Plan stated that it was "not a modification of the Loan Documents."  <u>Id.</u> Ex. C ¶ 3; <u>see</u> <u>Laurent</u>, 2011 WL 6888800, at *4 (holding that trial period plan did not create a false representation).  Further, the Swansons fail to plead  "that the statements were made with knowledge of the falsity of the representation [or] that the false statements caused damages."  <u>See</u> <u>Cox</u>, 794 F. Supp. 2d at 1066.

The alleged oral representation that defendants could not hold a sheriff's sale during the loan-modification process also fails. The Swansons are unable to plead detrimental reliance, because at the time of the alleged misrepresentation, they were already in default on their mortgage.  In other words, the Swansons had a preexisting legal duty to make monthly Note payments.  <u>See</u> <u>Laurent</u>, 2011 WL 6888800, at *4.  Moreover, the Swansons fail to specify who made the allegedly false representation.  <u>See</u> <u>Ming'ate v. Bank of Am., N.A.</u>, No. 11-1787, 2011 WL 4590431, at *4 (D. Minn. Sept. 30, 2011).  Therefore, the fraud claim fails and dismissal is warranted.

D.    **Negligent Misrepresentation**

A person makes a negligent misrepresentation when "(1) in the course of ... a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009) (citation omitted).

The bases for the negligent misrepresentation claim are the same as the fraud claim: that the Swansons would receive a permanent loan modification and that defendants could not foreclose during the modification process. As with the fraud claim, the negligent misrepresentation claim fails under Rules 8 and 9. See Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). Moreover, the Swansons fail to plead facts demonstrating reliance on the Workout Plan or alleged oral representations. "The bare assertion that plaintiffs reasonably relied on the information is not sufficient to survive a motion to dismiss." Cox, 794 F. Supp. 2d at 1067. Therefore, dismissal of the negligent misrepresentation claim is warranted.

**E.    Promissory Estoppel**

Promissory estoppel is "an equitable doctrine that implies a contract in law when none exists in fact." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (citation and internal quotation marks omitted).   To state a claim under promissory estoppel, a plaintiff must prove that "(1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice."   Id.

The Swansons argue that the Workout Plan is a promise to provide a permanent loan modification.[6]  As already explained, the Workout plan was not a promise.   Therefore, dismissal of the promissory estoppel claim is warranted.[7]

**F.    Unjust Enrichment**

To state a claim for unjust enrichment, a plaintiff must show that "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).   The defendants were entitled to payments under the Note.   Retaining

---

[6] The Swansons do not base their promissory estoppel claim on any oral representations.  See Am. Compl. ¶¶ 97-102.

[7] The court also notes that the Swansons' promissory estoppel claim is barred by § 513.33 and the statue of frauds.   See Tharaldson, 2011 WL 6957555, at *4.

payments and exercising a contractual right to foreclose after the Swansons failed to make payments is not unjust. Therefore, dismissal of the unjust enrichment claim is warranted.

### G.   Declaratory and Injunctive Relief

Lastly, the Swansons seek a declaration that they performed their obligations and that defendants must modify the Note. The Swansons also seek an order tolling and extending their right of redemption. The court has already determined that the Swansons did not perform their payment obligation. The court further determined that the Swansons did not plead any basis for relief. As a result, declaratory judgment is not warranted. Because the court dismisses the complaint, the request for injunctive relief is moot.

## IV.  Leave to Amend

Under the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In other words, the court should grant leave to amend, unless doing so would result in "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).

The Swansons filed their complaint on March 22, 2011. Thereafter, the defendant consented twice to the filing of an amended complaint. See ECF Nos. 24, 31. After the case was briefly stayed, an amended complaint was filed on November 18,

15

2011.  <u>See</u> ECF No. 34.  Although the court is uncertain whether the nearly seven-month delay between filing the original and amended complaints was a delay tactic, the court need not answer this question.  All claims rely on a faulty interpretation of the Workout Plan, and leave to amend for filing a third complaint would be futile.

Additionally, plaintiffs failed to follow local rules pertaining to leave to amend.  Under Local Rule 15.1, "[a] party who moves to amend a pleading shall file such motion and shall attach to the motion: (1) a copy of the proposed amended pleading, and (2) a redline comparing the proposed amended pleading to the party's operative pleading."  Such a motion must be made fourteen days in advance of a hearing.  <u>See</u> D. Minn. L.R. 7.1(a).  Where, as here, the plaintiff has not filed a motion to amend or a redlined complaint, the motion is not properly before the court.  <u>See</u> <u>O'Neil</u> <u>v. Simplicity, Inc.</u>, 574 F.3d 501, 505 (8th Cir. 2009) (citation omitted).  Therefore, the court denies plaintiffs' request for leave to amend.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 36] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 3, 2012

s/David S. Doty
David S. Doty, Judge
United States District Court
